QUILL v. JACOBY et al.

No. 19,330; August 18, 1894.

37 Pac. 524.

**Vendor and Vendee.**—In an Action to Rescind a Contract for the sale of land, which provided that the grantor was to build a levee along a river, whether the levee was completed within a reasonable time is a question for the court sitting as a jury; and, in the absence of any proof of damages to the grantee from failure to complete the same, a finding that it was completed within a reasonable time will not be disturbed, though the work was not completed for four years.[1]

**Vendor and Vendee — Construction of Contract — Levee.**— Where a contract for the conveyance of land facing on a street provides that a levee shall be constructed on the "west side of the said tract," which side faces a street, the construction of the levee in the center of the street is a compliance with the provision.

APPEAL from Superior Court, Los Angeles County; W. H. Clark, Judge.

Action by James Quill against A. Jacoby and another. There was a judgment for defendants, and plaintiff appeals. Affirmed.

---

[1] Cited and followed in Spaeth v. Ocean Park etc. Investment Co., 16 Cal. App. 332, 116 Pac. 981, where, no time having been fixed in the contract for demand to be made, it was left to the jury to determine from all the circumstances if the demand had been made within a reasonable time.

Cited and followed in Los Angeles Traction Co. v. Wilshire, 135 Cal. 657, 67 Pac. 1088, where also the question was left to the jury, to be determined on all the evidence, whether construction had been completed within a reasonable time.

M. C. Hester for appellant; Graff & Latham for respondents.

SEARLS, C.—On the thirteenth day of July, 1887, James Quill, the plaintiff and appellant herein, entered into two written contracts with A. Jacoby and L. Thorn, the defendants and respondents, by each of which the plaintiff agreed to purchase, and the defendants to sell and convey, a specified lot in the "Jacoby and Thorn Subdivision," in the city of Los Angeles. For one lot appellant was to pay $800—$300 down and the remainder in two equal payments of $250 each, at six and twelve months, respectively. For the other lot he was to pay $700 in three equal installments—one at the date of the execution of the contract and the others at six and twelve months, respectively. One of the lots was designated as "Lot 4" and the other as "Lot 3," both in block L of said tract. The deferred payments were to bear ten per cent interest per annum. The contracts were identical in date and form, except as to description of lots and the amounts of payment. Respondents were to convey the lots to appellant upon payment of the final installment of the purchase price. The contract contained the following further stipulation: That respondents would "construct and build a levee along the west side of said tract, in accordance with the plans and specifications as furnished by the council of the city of Los Angeles, and, if the last payment hereinbefore provided for should grow due before said levee has been accepted by the city as completed, then the last payment above referred to shall be deferred until said levee has been accepted by the proper officers of Los Angeles city, but shall be immediately due and payable on the acceptance of said work by the authorities of the city of Los Angeles." The agreement further provided that completion of the levee at an earlier date should not cause the last payment to become due before the expiration of the year from the date of the agreement as therein specified. Appellant made the payments, except the last, which was postponed until January 6, 1891, by reason of the nonconstruction of the levee, at which last-mentioned date appellant served upon respondents a written offer to relinquish and transfer to them all his interest in the lots under the contract,

47

and demanded a repayment of the money by him paid on account of the contracts, specifying the sums so paid, which being refused, this action was brought to recover the money thus paid, aggregating $1,107 and interest.

Defendants in their original answer admitted the levee was not constructed; averred that a reasonable time for the construction thereof had not elapsed; averred that it was impracticable to construct such levee until its continuation above and along Los Angeles river was built; averred their willingness to construct it as soon as the connections could be made; averred a contract between the city of Los Angeles and a railroad company, by which the latter was engaged in building the whole of the levee in question, including that along the west side of the lots. The answer also denied an offer to rescind, retransfer, etc. By a supplemental answer defendants averred the completion and acceptance of the levee on or before April 11, 1892. The cause was tried by the court without the intervention of a jury, and written findings filed, upon which judgment was entered in favor of the defendants for costs. Plaintiff appeals from the judgment and from an order denying his motion for a new trial.

The eighth finding of the court, which involves the main question in the case, is as follows: ''That the levee along the west side of said tract, in accordance with the plans and specifications as furnished by the council of the city of Los Angeles, is fully completed, and was in process of completion prior to the first day of January, 1891; and the commencement of the construction of said levee and the completion thereof were within a reasonable time after the making of said contract by and between the plaintiff and defendants.'' The objections made to this finding are: (1) That the evidence shows that no levee has ever been made along the west side of the tract mentioned in the contracts; (2) that the evidence and pleadings show that prior to January 6, 1891, no levee had been commenced along the west side of said tract; (3) that the evidence shows that nearly four years elapsed after contract made before completion of levee, and that it could have been built in three months. It appears from the evidence that the land agreed to be conveyed to plaintiff lies on the east side of the Los Angeles river, fronting upon a street or boulevard of, say, one hundred feet in width, run-

ning between it and the river; that a levee in front of lot
3, in block L (lot 4 being in the rear of lot 3, and not front-
ing on the boulevard), would be of no avail to keep out the
water of the river unless continued up the river, say, one
mile; that about the time of the execution of the agreement
a plan was devised for the construction of the levee by prop-
erty owners in interest, and a contract was let for the work,
under which a levee was constructed from the upper end to
within about three thousand feet of this tract, when the work
ceased from the difficulty in getting timber and lumber.    De-
fendants afterward sought to obtain the necessary timber and
lumber, but failed to do so.    They subsequently agreed with
the Los Angeles Terminal Railway Company that the latter
should construct the embankment or levee, and have and use
it as a roadbed for its railway.    The embankment is from eight
to ten feet high.    The exact time of its construction in front
of plaintiff's lot only appears inferentially from the testimony
of H. F. Stafford, as engineer and a witness for plaintiff, who
says that on the 24th of September, 1891, he "made a survey
of the land and of the levee that has been constructed by the
Terminal Railroad along that portion of the subdivision show-
ing blocks . . . . and L, as the same is delineated on the
map." It was therefore constructed prior to September 24,
1891.    It will be observed that the agreement specified no time
within which the levee was to be built.    If constructed within
the year, it did not hasten the date of the last payment for
the land; but, if not constructed and accepted within the year,
the effect of the delay was to defer such last payment until
the levee was completed and accepted by the city of Los
Angeles.    What was a reasonable time for the construction of
the levee (conceding that question to be involved) depended
largely upon the magnitude and character of the work to be
performed, and all the surrounding circumstances.    The facts
entering into the question were peculiarly within the province
of a jury, or the court sitting as such, and in the absence of
any allegation or proof of advantages which would have ac-
crued to appellant by an earlier construction of the levee,
or of damage to him by the delay, we are not prepared to say
that the finding of the court is contrary to the evidence.    Non
constat but that the fact that the last payment was deferred

until the levee was completed may have fully compensated appellant for the delay.

The objection that the finding that the levee was "in process of completion prior to the date of the rescission of the contract by appellant" is contrary to the admission of the answer, and the evidence is technically correct. The answer admits that defendants had not commenced the construction of the levee, but avers that the railroad company had commenced building it on the tenth day of November, 1890, and had been continuously engaged thereat up to the time of answer, all of which it averred was well known to plaintiff, and in the supplemental answer they aver its completion. No part of it in front of the lots in question had been constructed up to January, 1891. The further objection that no part of the levee was ever constructed "along the west side of said tract" is without merit. Appellant contends that it should have been along the west line of the "boulevard," whereas in fact it was in front of lot 3, and on or near the center of the boulevard. Lot 3, as indicated on the map referred to in the agreement, lies on the east side of, and fronts on, the boulevard. We may indulge the presumption that a conveyance of the lot will include the fee to the middle of the street, but know of no presumption under which it can be made to include the whole of the street. The embankment, being at this point apparently in the middle of the boulevard, must be on or near the line. The object of the levee was no doubt to protect the land from overflow from the river, and there is no suggestion that it is not efficacious to that result. The question whether or not the boulevard includes a portion of the river is one not raised by the pleadings, and, if raised, could cut no figure in the determination of the question involved here, for the reason that the failure of title, if any, is not of any land agreed to be conveyed. Upon the facts as found by the court, the conclusions of law are correct. Indeed, it may well be doubted whether, assuming the facts to be as stated in the complaint, a case is made under which plaintiff was authorized to rescind the contract. "Where the failure be but partial, leaving a distinct part as a subsisting and executed consideration, and leaving also to the other party his action for damages for the part not performed," a rescission cannot be had: Parsons on Contracts, 8th ed., p. 679. In Franklin v. Miller, 4 Adol.

& E. 599, Littledale, J., says: "It is a clearly recognized principle that if there is only a partial failure of performance by one party to a contract, for which there may be a compensation in damages, the contract is not put an end to." It would seem that, when the parties stipulated that the last payment upon the land should be deferred until the levee was constructed, they agreed upon the consequences which should follow a failure to construct the levee, and that in such a case, there having been no time specified within which it was to be constructed, the delay should not, unless greatly extended, give a right to a rescission. The judgment and order appealed from should be affirmed.

We concur: Temple, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.